PETITION

FILED
U.S. DISTRICT COURT

2015 MAR -9  PM 12: 25

S.D. OF N.Y.W.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**15 CV 1732**

| | | |
|---|---|---|
| In the Matter of | | |
| Brian Carew | ) | |
| Administrator for the | ) | |
| Estate of Michael Doherty | ) | Plaintiff |
| (Pro-se) | ) | |
| | ) | **JUDGE SEIBEL** |
| and | ) | DOCKET NO. |
| | ) | |
| Keane Unclaimed Property | ) | |
| Unclaimed Property | ) | |
| Recovery and Reporting LLC | ) | |
| Robert Irvine | ) | DEFENDANTS |
| PerkinElmer Inc. | ) | |
| Vishay Intertechnology Inc | ) | |
| American Stock Transfer | ) | |
| and Trust Company LLC | ) | |

JURISDICTION

1.      This action comprises financial transactions in excess of 360,000.00 (Three

Hundred and Sixty Thousand Dollars) through several companies in multiple

jurisdictions and as such Pursuant to the Federal Rules of Civil Procedure it is

requested that the following matter be heard in the United States District Court,

Southern District White Plains, New York.

PARTIES

2.      Plaintiff Brian Carew, Executor of the Estate of Michael Doherty with an

address of 31 Hemlock Hill Ln, Suffern New York 10901 brings this action to obtain

preliminary and permanent injunctive relief, rescission of contract, restitution, redress

and any further equitable relief for the defendants deceptive and illegal acts.

3.      Respondent Keane Unclaimed Property having acquired Unclaimed Property Recovery and Recording LLC in December 2014, (now the parent company) headquartered in New York with an address of 1001 Avenue of the Americas 14th Floor New York, NY 10018 United States

4.      Respondent Unclaimed Property Recovery and Recording LLC being a corporation headquartered in New York with an address of 450 Seventh Ave Suit 905, New York, NY 10123. Hereafter referred to as UPRR

5.      Respondent Robert Irvine as president of UPRR at all times material to this complaint, acting alone or in concert with others, has formulated, directed, or controlled the acts or practices of UPRR, including the various acts or practices alleged in this complaint. His principal office or place of business is the same as UPRR.

6.      Respondent PerkinElmer Inc. being a corporation headquartered in Massachusetts with an address of 940 Winter St., Waltham, Massachusetts 02451. Hereafter referred to as PerkinElmer

7.      Respondent Vishay Intertechnology Inc. being a corporation headquartered in Pennsylvania with an address of 63 Lancaster Ave, Malvern PA 19355 hereafter referred to as Vishay

8.      Respondent American Stock Transfer & Trust Company LLC being a corporation headquartered in New York with an address of 6201 15th Ave Brooklyn

New York 11219; being a subsidiary of Pacific Equity Partners an Australian company with an address of Level 31 126 Phillips St., Sydney Australia hereafter referred to as American Stock Transfer & Trust

COMPLAINT

It is submitted: Unclaimed Property Recovery and Recording LLC (UPRR) in concert with the above named co-defendants have violated the following;

9.      Section 160.12 of the GLB Act 15 U.S.C. § 160.12 (a) Limits on sharing account number information for marketing purposes; General prohibition on disclosure of account numbers. You must not, directly or through an affiliate, disclose, other than to a consumer reporting agency, an account number or similar form of access number or access code for a consumer's credit card account, deposit account or transaction account to any nonaffiliated third party for use in telemarketing, direct mail marketing or other marketing through electronic mail to the consumer.

10.      Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a), which prohibits any person from using false pretenses to obtain customer information of a financial institution from the financial institution or from the customer.

11.      The data protection rules: Safeguarding Customer Information Rule ("Safeguards Rule"), 16 C.F.R. Part 314, issued pursuant to Title V, Subtitle A of the Gramm-Leach-Bliley Act ("GLB Act"); 15 U.S.C. §§ 6801-6809;

6801 (a) Privacy obligation policy

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information

(b) Financial institutions safeguards

(1) to insure the security and confidentiality of customer records and information;

(2) to protect against any anticipated threats or hazards to the security or integrity of such records; and

(3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer.

12.     Further; Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a). Having misused the Personal Identification Information (PII) received for the purpose of locating a shareholder through the Pre-Escheatment Program.

13.     If the Personal Identification Information was shared to fulfill any statutory requirement by one or more of the Respondents to locate a share holder- the further use of this information by UPRR is a misuse of Personal Identification Information on the part of UPRR.

14.     It is further alleged that the Second named defendant UPRR has engaged in contractual relations with all further co-defendants and misrepresented the purpose of those contractual relations in contacting the plaintiff.

15.     The acts and practices of all defendants as alleged in this complaint have been affecting the personal property of the plaintiff by conversion, fraud and misrepresentation causing great inconvenience and hardship.

16.     Defendant UPRR misrepresented property owned by the plaintiff as being within the control of UPRR.

17.     Defendant UPRR misrepresented that they had been engaged by PerkinElmer, Vishay and American Stock Transfer.

18.     The very nature of that contractual engagement is at issue.

19.     In this case the statutory requirement is for the stock company (PerkinElmer and Vishay) to attempt to find the authorized shareholder and to settle dormant accounts prior to escheatment appears to have been transferred to UPRR.

20.     UPRR contracts with many companies to seek out individuals owning shares or other property that is in danger of being escheated through what is known as Pre-Escheatment Location services (PEL).

21.     This contractual engagement using Personal Identification Information (PII) would be for the sole purpose of returning to the contracting company the whereabouts of the individual or estate involved, having dormant accounts that are in danger of being escheated.

22.     Respondent UPRR having used this PII to then engage the Plaintiff in separate contractual relations for profit is in breach of data protection law.

23.     All of the Respondents are considered "financial institutions" defined by Section 509(3)(A) of the GLB Act, 15 U.S.C. § 6809(3)(A), and are subject to the requirements of the Safeguards Rule.

24.     It is further asserted that the defendants; PerkinElmer, Vishay and American Stock Transfer & Trust having attempted to discharge statutory obligations by engaging UPRR have failed in their due diligence.

25.     PerkinElmer, Vishay and American Stock Transfer & Trust did transfer stock in July 2011 to the Estate of Michael Doherty – Brian Carew Administrator at the address of 31 Hemlock Hill Ln. Suffern New York and that would be the last known address of record.

26.     Why the total stock owned and identifiable at that time (July 2011) was not transferred to the estate will be of further issue.

27.    Both Defendants PerkinElmer and Vishay failed in their statutory duty to notify the Plaintiff of unclaimed property.

28.    The property identified by Defendants PerkinElmer and Vishay was at no time-abandoned property.

29.    Both Defendants PerkinElmer and Vishay failed to protect the Personal Identification Information by engaging in contractual relations allowing a third party to use this PII for profit without the consent or authorization of the consumer.

30.    PerkinElmer and Vishay are considered holding a fiduciary responsibility to their respective shareholders.

31.    It is further asserted that if the parties are relying on legislation in the state of Connecticut- Chapter 32 Sec. 3-61a. of Connecticut State Treasury code should apply:

Property held by fiduciary be presumed abandoned, when. All property and any income or increment thereon held in a fiduciary capacity for the benefit of another person is presumed abandoned unless the owner has, within seven years after it became payable or distributable, increased or decreased the principal, accepted payment of principal or income, corresponded in writing with the fiduciary concerning the property or otherwise indicated an interest as evidenced by a memorandum on file with the fiduciary.

32.    In July 2011 there was clear and undeniable correspondence with the Plaintiff by both PerkinElmer and Vishay through the transfer of shares and sale of those

shares. This correspondence addressed of 31 Hemlock Hill Ln. Suffern, New York-the home address of the Plaintiff.

COUNT I
CONDUCT OF THE PARTIES

33.     The conduct of UPRR having been engaged by companies for the purpose of complying with state regulations, (seeking and identifying the rightful owners of shares) among other things, have materially misused this personal Identification Information in the following manner:

a. Engaging the plaintiff in misleading contractual relations.

b. Purporting to be working on behalf of the stock company;

c. Misleading the plaintiff as to the threat of escheatment and the implications of such being loss of the property to the State when in fact being the rightful owner even if escheatment had occurred entitled the respondent to recover the property at no cost.

34.     The contracts in question, which would be extremely time sensitive based on regulatory requirements, were executed without dates. The issues of unclaimed property and escheatment are expressly governed by time constraints through statute in each state. Contracts of any nature should be dated; the contracts at issue in this case were entirely without dates.

35.     These practices are clearly exploitation of vulnerable individuals and as such should be stopped.

36.    Due to the misuse of personal data by one or all of the defendants, the plaintiff has been injured.

## COUNT II
## BREACH

As a direct result of failures of all parties to comply with the law, between July 2011 and January 2015, the ability to settle the estate of Michael Doherty has been hindered. Excessive time and money has been lost having to manage these affairs to the detriment of the estate. Due to the misleading and illegal conduct on the part of all defendants excessive and unnecessary stress has occurred to the Plaintiff.

## WHEREFORE

37.    I am seeking the court's intervention and seek to answer the following questions pertaining to these events, and to advise the Estate of their conclusions.

Question #1:  How is it possible for two transfer agents (Computershare and American Stock Transfer and Trust Company LLC) plus a major stock-holding company (Perkin Elmer Inc.) to engage and retain the same finding company (Unclaimed Property Recovery and Reporting LLC) to look for the supposedly missing heirs, and then in violation of Gramm-Leach Bliley Act transfer information directly to that company (UPRR), thus enabling the latter to present an undated, fraudulent and misleading contract that divided assets and extracted an unnecessary fee for finding an Estate that was never lost and which owned those very shares.

Question #2:  How and why could three major and successful transfer companies—Bank of New York Mellon, Computershare, and American Stock

Respectfully submitted

3/9/15

Brian Carew                                                    Date
31 Hemlock Hill Ln
Suffern, New York 10901
Carewbrian15@verison.net
845-357-9015

Please reference the following case;

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MARYLAND (NORTHERN DIVISION)
FEDERAL TRADE COMMISSION v. INFORMATION SEARCH, INC. and
DAVID J. KACALA FTC MATTER/FILE NUMBER: 062 3102
CIVIL ACTION NUMBER: 106-CV-01099-AMD
FEDERAL COURT: District of Maryland
http://www.ftc.gov/enforcement/cases-proceedings/062-3102/information-search-inc-
david-j-kacala-district-maryland



**Town of Stow**
**OFFICE OF THE TOWN CLERK**
Town Building - 380 Great Road
Stow, Massachusetts 01775-2127
(978) 897-4514 ext. 1

The Commonwealth of Massachusetts
MEDICAL EXAMINER'S CERTIFICATE OF DEATH
REGISTRY OF VITAL RECORDS AND STATISTICS

| | |
|---|---|
| OCME CASE NUMBER | 10-19166 |
| REGISTERED NUMBER | 18 |
| STATE USE ONLY | |

| 1. DECEDENT - NAME FIRST | MIDDLE | LAST | 2 SEX | 3 DATE OF DEATH (Mo., Day, Yr.) |
|---|---|---|---|---|
| Michael | | Doherty | male | September 8, 2010 |

| 4a PLACE OF DEATH (City/Town) | 4b COUNTY OF DEATH | 4c HOSPITAL OR OTHER INSTITUTION - Name or location if in either, give street and number |
|---|---|---|
| Stow | Middlesex | 2 Marlboro Road |

| 5 PLACE OF DEATH (Check only one) | 6 SOCIAL SECURITY NUMBER | 7 IF US WAR VETERAN specify War |
|---|---|---|
| Hospital ☐ Inpatient ☐ ER/Outpatient ☐ DOA  Other ☐ Nursing Home ☒ Residence ☐ Other (specify): | 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 | Vietnam |

| 8a WAS DECEDENT OF HISPANIC ORIGIN? (If yes, specify) | 8b RACE (specify) | 9 DECEDENT'S EDUCATION (highest grade completed) Elem-Sec (0-12)  College (1-4, 5+) |
|---|---|---|
| ☒ No ☐ Yes: | white | 4 |

| 10a AGE - Last Birthday | b UNDER 1 YEAR | c UNDER 1 DAY | 10d DATE OF BIRTH (Mo., Day, Yr.) | 11 BIRTHPLACE (City and State or Foreign Country) |
|---|---|---|---|---|
| 1 Yr 0 / 68 | YRS MTHS | HRS MINS | May 12, 1942 | New London, Connecticut |

| 12 MARRIED, NEVER MARRIED, WIDOWED OR DIVORCED | 13 LAST SPOUSE (full name at birth or adoption) | 14 USUAL OCCUPATION (Prior, if retired) | 14b TYPE OF BUSINESS/INDUSTRY |
|---|---|---|---|
| never married | none | Computer Programmer | Digital Computers |

| 16a RESIDENCE - No. and Street, City/Town, County, State/Country | 15b Zip Code |
|---|---|
| 2 Marlboro Road, Stow, Middlesex, Massachusetts | 01775 |

| 16 FATHER - full name at birth or adoption | 17 STATE OF BIRTH (if not in US, name country) | 18 MOTHER - full name at birth or adoption | 19 STATE OF BIRTH (if not in US, name country) |
|---|---|---|---|
| Michael Doherty | Ireland | Brigid Byrne | Ireland |

| 20 INFORMANT'S NAME | 21 MAILING ADDRESS | 22 RELATIONSHIP |
|---|---|---|
| Brian Carew | 31 Hemlock Hill Lane, Suffern, New York 10901 | Cousin |

| 23 METHOD OF IMMEDIATE DISPOSITION | 24 FUNERAL SERVICE LICENSEE OR OTHER DESIGNEE | 25 LICENSE # |
|---|---|---|
| ☐ Burial ☒ Cremation ☐ Entombment ☐ Removal from State ☐ Donation ☐ Other: | Christopher P. Goulet, Sr. | 6593 |

| 26a PLACE OF DISPOSITION (Name of cemetery, crematory, or other) | 26b LOCATION (City/Town/State) |
|---|---|
| Duxbury Crematory | Duxbury, Massachusetts |

| 27 DATE OF DISPOSITION (Mo., Day, Yr.) | 28a/b NAME AND ADDRESS OF FACILITY OR OTHER DESIGNEE |
|---|---|
| October 5, 2010 | Hamel, Wickens & Troupe 26 Adams St. Quincy, MA 02169 |

| 29 PART I - CAUSE OF DEATH - SEQUENTIALLY LIST IMMEDIATE CAUSE THEN ANTECEDENT CAUSES THEN UNDERLYING CAUSE | APPX INTERVAL |
|---|---|
| a Immediate Cause  ATHEROSCLEROTIC AND HYPERTENSIVE | |
| b Due to  CARDIOVASCULAR DISEASE | YEARS |
| c Due to | |
| d Due to | |

| 30 PART II - OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH | 31 AUTOPSY? ☐ Yes ☒ No |
|---|---|
| | |

| 34 MANNER OF DEATH | 35a DATE OF INJURY | 35b TIME OF INJURY | 35c INJURY AT WORK? |
|---|---|---|---|
| ☒ Natural ☐ Accident ☐ Homicide ☐ Suicide ☐ Could not be determined ☐ Pending investigation | | AM PM | ☐ Yes ☐ No |

| 35d DESCRIBE HOW INJURY OCCURRED | 35e PLACE OF INJURY (Type) |
|---|---|
| | |
| | 35f LOCATION/ADDRESS OF INJURY |

| 37 MEDICAL EXAMINER CERTIFICATION | 37c APPX TIME OF DEATH | 37d DATE PRONOUNCED |
|---|---|---|
| (Name and Address) Mindy T. Hull, MD 720 Albany Street Boston MA 02118 | UNKNOWN | SEPTEMBER 8, 2010 |
| 37a On the basis of examination and/or investigation in my opinion death occurred at the time, date, and place and due to the cause(s) stated. (Signature) AMH | 38 LICENSE # 630737 | 37e TIME PRONOUNCED 6:13 ☐ AM ☒ PM |
| | ☒ MD ☐ DO | 37b DATE SIGNED SEPTEMBER 9, 2010 |

| 40a RN/PA/NP PRONOUNCEMENT? ☐ Yes ☒ No | 40b IF YES, DATE | 40c IF YES, TIME ☐ AM ☐ PM | 40d NAME OF PRONOUNCER | TITLE ☐ RN ☐ PA ☐ NP |
|---|---|---|---|---|

| 41 DATE BURIAL PERMIT ISSUED | 42 RECEIVED IN CITY/TOWN OF | 43 DATE OF RECORD |
|---|---|---|
| October 4, 2010 | Stow | October 5, 2010 |
| BURIAL AGENT SIGNATURE  Linda E. Hathaway | CLERK'S SIGNATURE  Linda E. Hathaway | |

I, Linda E. Hathaway, the undersigned, hereby certify that I am the Registrar of Vital Records and Statistics; that as such I have custody of the records of births, marriages and deaths required by law to be kept in my office; and I do hereby certify that the above is a true copy attest from said records.

Witness my hand and the seal of the Town of Stow on this __15th__ day of __October 2010__.

_Linda E. Hathaway_
Linda E. Hathaway, Town Clerk

*Top of page*

| DECREE<br>APPOINTMENT OF ADMINISTRATOR | Docket No.<br>MI11P1004EA | Commonwealth of Massachusetts<br>The Trial Court<br>Probate and Family Court |
|---|---|---|

In the Estate of: Michael Doherty

Late of: Stow, MA 01775

At the **Middlesex Probate and Family Court**

on: _May 5, 2011_
(date)

the Honorable _William F. McSweeny III_ presided.

All persons interested

☐ having assented

☐ having been notified in accordance with the law and

    ☐ no objections were made;

    ☐ objections were made which were later withdrawn or stricken;

    ☐ objections were made and a hearing was held;

Middlesex Probate and Family Court
208 Cambridge Street
Cambridge, MA 02141

(617)768-5800

IT IS DECREED that

Brian Carew

of   31 Hemlock Hill Lane

Suffern, NY 10901

*bottom of page*

be appointed administrator/trix of the estate named above first giving bond **Without Surety** for the due performance of said trust.

~~IT IS FURTHER ORDERED that~~

Date:   5/5/11

_____
Judge

**DATED**   **JUN 1 9 2014**

I, the undersigned HEREBY CERTIFY that I am the Register of Probate and Family Court in the County of Middlesex, that such as I have Custody of the records of said Court, and I further Certify that the foregoing is a photographic copy of the decree of appointment of the fiduciary, that said fiduciary has given bond as required by the law and that said appointment remains in full force.

Witness, by my hand and seal of Probate Court of the Commonwealth of Massachusetts, in Cambridge.

_____
Register of Probate

SUPPORTING AFFIDAVIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of
     Brian Carew               )
     Administrator for the       )
     Estate of Michael Doherty   )     Plaintiff
     (Pro-se)                  )
                         )
          and           )     DOCKET NO.
                         )
     Keane Unclaimed Property )
     Unclaimed Property     )
     Recovery and Reporting LLC )
     Robert Irvine          )     Respondents
     PerkinElmer Inc.        )
     Vishay Intertechnology Inc  )
     American Stock Transfer   )
     and Trust Company LLC    )

## Supporting Affidavit of Brian Carew

Michael C. Doherty, my first cousin, died at his home in Stow, Massachusetts in summer of 2010. Being the closest relative, I was contacted by Stow police and gave some assistance with the autopsy and preparation of his remains for cremation. My name and address were prominent on Michael's death certificate as his first cousin.

In early 2011 my family requested that I become Administrator of his Estate. With the help of Probate Attorney James Ferraro in Cambridge, MA we initiated a probate and established an estate tax number. We found that Michael had considerable holdings, with the complicating factor of thirty seven first cousins, along with forty-five children of eight of those first cousins, who by Massachusetts Law, share their parent's allotment: in all, eighty-two cousins, living in USA, England, Ireland, and Australia. Based on the information we had at the time, the estate assets were approximately $500,000.00.

In July 2011 we completed the bulk of the retrieval of assets that Michael had in bank savings, stocks, bonds, IRA's, life insurance, and personal possessions (Michael owned another house in Connecticut). We put all monies retrieved in a tax account at Citizens Bank, New York, and engaged a branch of that bank—Citizens Investment Services—to convert, for a fee, his extensive holdings: approximately $1,600,000.

At this time—July 2011—we approached Bank of New York Mellon (BNY Mellon for further reference) Shareholder Service as transfer agent for Michael's ownership of 8,000 shares of Perkin Elmer stock. I instructed BNY Mellon to liquidate ALL the shares and transfer the proceeds to me as representative of the Estate, which it did. Attorney Ferraro and I were not made aware that the stock had split, and that Michael possessed 16,000 shares at the time of our request.

In December 2011 BNY Mellon sold the Shareholder Service to Computershare.

At the same time (July 2011) we approached American Stock Transfer, as agent for Vishay Technology, and requested that all 3,634 shares of Vishay assets be transferred to the estate. They complied, sending $53,789 (for what we thought was all the shares) minus a fee of $212. Once more, we were unaware that American Stock Transfer held additional shares of Vishay stock.

Three years passed, and the Estate determined the whereabouts of the 82 heirs. After the sales of Michael's home in Stow, MA and his second home in New London, CT, we arrived at a final figure of $1,980,000 in Estate assets. After these monies were distributed accordingly to the heirs, Attorney Ferraro and I congratulated ourselves on a job well done and finally completed.

Just before we were about to close the probate Estate in June 2014, I was telephoned and informed by a lawyer, Michael Albanese, who had helped me in the sale of the home in CT. that he—Albanese—was sent mail stating that additional stock had been found by Unclaimed Property Recording and Reporting (UPRR). When I contacted Michael Sloan, a representative of UPRR, he told me that there were 8,000 more shares of Perkin Elmer stock and $8400 in dividends for same, along with 259 additional shares of Vishay Technology being held by American Stock Transfer.

Immediately I assumed that the Estate both owned and controlléd the stock in question, and that UPRR was acting as the broker in selling and transferring the proceeds of that stock to the Estate for a small fee, as Citizens Investment Services did. I was never informed otherwise.

When Mr. Sloan asked me if I wanted him to sell the stock, I said yes. He then sent me a contract (having no date on it), which I signed, without any prior discussion of ownership or fee by UPRR.

Within a week UPRR sent me three checks: $296,338.56 (8,000 shares of Perkin Elmer); $8,400 (dividends on the 8,000 shares); $3,170.16 (259 shares of Vishay Technology stock), totaling $307,572.02. A 20% fee ($74, 853.98) was deducted from the total of $382,426 we expected to receive.

At the moment I received those three checks, I realized that UPRR was not a broker and began questioning their involvement.

Except for offering to lower the fee to half (to 10%), UPRR offered no apology or explanation for any possible mistake they had made in asking a 20% fee of $74,853.98 from an estate that was never "lost", and for having claimed they

possessed stocks which in fact they did not. If I had understood that this company was not in control of the shares I would not have signed the contracts in the first place.

In recent months it has come to my attention that a further 2,408 shares of Vishay stock have been "discovered" by American Stock Transfer. There has been no resolution as of this date.


Brian Carew

3/9/15

Date